UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE AUGUSTINE LEON,<br><br>        Petitioner,<br><br>    v.<br><br>WILLIAM MUNIZ,<br><br>        Respondent. | No. 1:15-cv-00342-LJO-SKO HC<br><br>**FINDINGS AND RECOMMENDATION TO DENY PETITION FOR WRIT OF HABEAS CORPUS AND DECLINE TO ISSUE CERTIFICATE OF APPEALABILITY**<br><br>**(Doc. 1)** |

Petitioner, Jose Augustine Leon, is a state prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. He alleges four grounds for habeas relief: (1) a jury instruction misled the jury in evaluating the credibility of prosecution witnesses with prior criminal convictions; (2) a jury instruction misled the jury in evaluating the credibility of in-custody prosecution witnesses; (3) the Court erred in failing to instruct the jury on a heat-of-passion/voluntary manslaughter defense as a lesser included offense to murder; and (4) cumulative error. Having reviewed the record as a whole and applicable law, the undersigned recommends that the Court deny the habeas petition.

1

## I. Factual and Procedural Background[1]

On June 27, 2009, Gustavo Chapa ("Chapa") arrived at Petra Garcia's ("Garcia") house with cuts on his head and face. Chapa asked for Garcia's son, Petitioner, explaining that he was attacked by members of the Sureños gang, including Omar Rodriguez ("Rodriguez"). Petitioner and Chapa are part of the criminal street gang Varrio Orange Cove Rifa ("VOCR"), also known in Orange Cove, California, as the Bulldogs. Chapa asked Petitioner for a ride to the hospital and the two left the house.

Petitioner drove Chapa to Charles Rowan's ("Rowan") house using Garcia's car. At Rowan's house, Petitioner played video games and Rowan took care of Chapa's injuries. While Petitioner was playing games, Rowan and Chapa left the house in Petitioner's car. After Rowan did not return with the car, Petitioner walked home, but later returned to Rowan's house. According to Petitioner, Rowan stated that Rowan and Chapa shot some guys and then got rid of Petitioner's vehicle.[2]

That evening, a party was being held across the street from Rowan's house. A group of men, including Daniel Gonzalez ("Gonzalez"), Elizando Diaz, Jr ("Diaz"), and Miguel Juarez ("Juarez") left the party together. As the group walked down the street, they saw a car pass them and make a U-turn. As the car came back toward the group, they heard gunshots.

Gonzalez was killed at the scene. Diaz was struck by shotgun pellets in his chest, hands, and head and was hospitalized. While speaking with police officers at the hospital after the shooting, Diaz stated that he recognized the vehicle as Petitioner's car and that he saw Petitioner point a shotgun out of the driver's side window and shoot him.

Juarez also observed Petitioner driving his car near the party before the shooting and

---

[1] Factual information is derived from *People v. Leon*, (Cal.App. May 9, 2014) (No. F064119), and the review of the record by the undersigned.
[2] These statements were not admitted for their truth at trial, but to explain Petitioner's state of mind and subsequent conduct.

identified Petitioner's vehicle as the one from which the shots were fired. Juarez informed the police that earlier in the evening, Rodriguez told Juarez that he had beaten up a member of another gang earlier that afternoon, Chapa, after the individual called him a derogatory term.

At the scene of the shooting, deputies located the body of Gonzalez. They also found three shell casings from a 20-gauge shotgun. Two days after the shooting, an abandoned and burned 1999 Chevrolet Malibu registered to Petitioner's mother, Garcia, was recovered. After the shooting, deputies searched Petitioner's apartment.[3] Two yellow shotgun shells, similar to those found at the scene of the shooting, were found in Petitioner's apartment during the search. A criminalist testified at Petitioner's trial that the shotgun shells recovered in Petitioner's apartment, at the scene of the shooting, and from the victim, were similarly modified to add multiple sizes of shot in a shell.

During Petitioner's preliminary hearing, Diaz testified that his original statements to police officers were untruthful and he could not tell from what type of car the gunshots were fired or the color of the car. As he was leaving the preliminary hearing, a district attorney investigator stopped Diaz to ask him why his testimony at the preliminary hearing contradicted what he told police officers on the night of the shooting. Diaz replied that if he identified Petitioner as the shooter, he would "develop a snitch jacket that would follow him for the rest of his life."

The prosecutor called Rowan as a rebuttal witness at trial. Rowan denied involvement in the shooting and stated that he barely knew Chapa and Petitioner. Rowan provided an alibi for the time of the shooting.

At the trial, the Court gave two jury instructions relevant to the case at bar. First, the Court instructed the jury as to CALCRIM No. 316, which stated

> [i]f a witness has been convicted of a crime, you may consider that fact in evaluating the credibility of the witness's testimony. The fact of a conviction

---

[3] The record does not specify how many days after the shooting the search of Petitioner's apartment occurred.

3

does not necessarily destroy or impair a witness's credibility. It is up to you to decide the weight of that fact and whether that fact makes the witness believable.

Second, the Court gave CALCRIM No. 337, because both Rodriguez and Rowan were physically restrained when they testified. As read to the jury, CALCRIM No. 337 stated

[w]hen Omar Rodriguez and Charles Rowan testified, they were physically restrained. Do not speculate about the reason. You must completely disregard this circumstance in deciding the issues in this case. Do not consider it for any purpose or discuss it during your deliberations. Evaluate the witness'[s] testimony according to the instructions I have given you.

The jury found Petitioner guilty of first degree murder (Cal. Penal Code § 187(a)) and premeditated attempted murder (Cal. Penal Code §§ 187(a), 664(a)). The jury also found true the allegations that Petitioner discharged a firearm resulting in great bodily injury or death (Cal. Penal Code § 12022.53(d)) and he committed the crime for the benefit of, or in association with, a criminal street gang, VOCR, (Cal. Penal Code § 186.22(b)(1)). The trial court sentenced Petitioner to a term of life in prison without the possibility of parole for the murder of Gonzalez and a consecutive term of seven years for the attempted murder of Diaz.

Petitioner appealed the conviction to the State Court of Appeal, Fifth Appellate District, which affirmed the conviction on May 9, 2014. The California Supreme Court summarily denied the appeal on July 16, 2014.

On December 30, 2014, Petitioner filed a petition for writ of habeas corpus in this Court.

II. **Standard of Review**

A person in custody as a result of the judgment of a state court may secure relief through a petition for habeas corpus if the custody violates the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); *Williams v. Taylor*, 529 U.S. 362, 375 (2000). On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed thereafter. *Lindh v. Murphy*, 521 U.S. 320, 322-23 (1997). Under the statutory terms, the petition in this case is governed by AEDPA's

4

provisions because it was filed April 24, 1996.

Habeas corpus is neither a substitute for a direct appeal nor a device for federal review of the merits of a guilty verdict rendered in state court. *Jackson v. Virginia*, 443 U.S. 307, 332 n. 5 (1979) (Stevens, J., concurring). Habeas corpus relief is intended to address only "extreme malfunctions" in state criminal justice proceedings. *Id.* Under AEDPA, a petitioner can obtain habeas corpus relief only if he can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Lockyer v. Andrade*, 538 U.S. 63, 70-71 (2003); *Williams*, 529 U.S. at 413.

"By its terms, § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions set forth in §§ 2254(d)(1) and (d)(2)." *Harrington v. Richter*, 562 U.S. 86, 98 (2011).

As a threshold matter, a federal court must first determine what constitutes "clearly established Federal law, as determined by the Supreme Court of the United States." *Lockyer*, 538 U.S. at 71. In doing so, the Court must look to the holdings, as opposed to the dicta, of the Supreme Court's decisions at the time of the relevant state-court decision. *Id.* The court must then consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." *Id.* at 72. The state court need not have cited clearly established Supreme Court precedent; it is sufficient that neither the reasoning nor the result of the state court contradicts it. *Early v. Packer*, 537 U.S. 3, 8 (2002). The federal court must apply the presumption that state courts know and follow the law. *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). The petitioner has the burden of establishing that the decision of the

state court is contrary to, or involved an unreasonable application of, United States Supreme Court precedent. *Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996).

"A federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Lockyer*, 538 U.S. at 75-76. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, the AEDPA standard is difficult to satisfy since even a strong case for relief does not demonstrate that the state court's determination was unreasonable. *Harrington*, 562 U.S. at 102.

### III. Errors in Jury Instructions Do Not Present Cognizable Federal Claims.

Petitioner contends that the jury instructions on witness credibility and witnesses being physically restrained in court, CALCRIM Nos. 316 and 337, violated his rights to due process of law and a fair jury trial. (Doc. 1 at 6-9.) Respondent replies that neither claim is a ground for habeas relief, explaining that there was no reasonable likelihood the jurors misconstrued or misapplied the instructions in a way that violated Petitioner's rights to due process. (Doc. 16 at 11-15.)

#### A. Federal Habeas Review of Jury Instruction Errors

Generally, claims of instructional error are questions of state law and are not cognizable on federal habeas review. "[T]he fact that [an] instruction was allegedly incorrect under state law is not a basis for habeas relief." *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991) (citing *Marshall v. Lonberger*, 459 U.S. 422, 438, n.6 (1983) ("[T]he Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules")). A petitioner may not "transform a state-law issue into a federal one merely by

asserting a violation of due process." *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1997) (citing *Melugin v. Hames*, 38 F.3d 1478, 1482 (9th Cir. 1994)).

To prevail in a collateral attack on state court jury instructions, a petitioner must do more that prove that the instruction was erroneous. *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977). Instead, the petitioner must prove that the improper instruction "by itself so infected the entire trial that the resulting conviction violated due process." *Estelle*, 502 U.S. at 72 (internal citations omitted). Even if there were constitutional error, habeas relief cannot be granted absent a "substantial and injurious effect" on the verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).

A federal court's review of a claim of instructional error is highly deferential. *Masoner v. Thurman*, 996 F.2d 1003, 1006 (9th Cir. 1993). A reviewing court may not judge the instruction in isolation but must consider the context of the entire record and of the instructions as a whole. *Id.* The mere possibility of a different verdict is too speculative to justify a finding of constitutional error. *Henderson*, 431 U.S. at 157. "Where the jury verdict is complete, but based upon ambiguous instructions, the federal court, in a habeas petition, will not disturb the verdict unless there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution." *Solis v. Garcia*, 219 F.3d 922, 927 (9th Cir. 2000) (quoting *Estelle*, 502 U.S. at 72) (internal quotation marks omitted).

If a trial court has made an error in an instruction, a habeas petitioner is only entitled to relief if the error "had a substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637 (quoting *Kotteakos*, 328 U.S. at 776) (internal quotation marks omitted). A state prisoner is not entitled to federal habeas relief unless the instructional error resulted in "actual prejudice." *Id.* A violation of due process occurs only when the instructional error results in the trial being fundamentally unfair. *Estelle*, 502 U.S. at 72-73;

7

*Duckett v. Godinez*, 67 F.3d 734, 746 (9th Cir. 1995). If the court is convinced that the error did not influence the jury, or had little effect, the judgment should stand. *O'Neal v. McAninch*, 513 U.S. 432, 437 (1995).

### B. The Court did not Err in Instructing the Jury on Witness Credibility.

#### 1. The Instruction: CALCRIM No. 316

Petitioner argues that CALCRIM No. 316 misled the jury to his disadvantage. CALCRIM No. 316 reads:

> [i]f a witness has been convicted of a crime, you *may* consider that fact in evaluating the credibility of the witness's testimony. The fact of a conviction does not necessarily destroy or impair a witness's credibility. It is up to you to decide the weight of that fact and whether that fact makes the witness less believable.

*People v. Leon*, (Cal.App. May 9, 2014) (No. F064119) at 10 (emphasis added). The instruction was not modified from the instruction published by the Judicial Council of California.

Petitioner contends that the instruction should state that the jury "*must*" consider a criminal conviction, instead of "*may*" consider. (Doc. 1 at 6.) Petitioner argues that this error violated his "federal constitutional rights to due process of law and a fair jury trial because a jury must consider exculpatory evidence upon which the defendant relies to raise a reasonable doubt as to the charges against him." *Id*.

#### 2. State Court of Appeal Decision

The Court of Appeal rejected Petitioner's claim that the jury "*must*" consider a witness's prior convictions in evaluating the witness's testimony. *Leon*, (No. F064119) at 10. In his appeal to the Court of Appeal, Petitioner argued that CALCRIM No. 316 was erroneous because it violated his right to present evidence in his own defense. *Id*. The Court of Appeal stated, however, that Petitioner failed "to recognize [ ] that there is a significant difference

between the right to present evidence [in his own defense] and an instruction that aids the jury in evaluating the credibility of a witness." *Id*. According to the Court of Appeal, the instruction assisted the jury in evaluating witness testimony and did not impede Petitioner's ability to present evidence in his defense. *Id*.

The Court of Appeal similarly disagreed with Petitioner's contention that CALCRIM No. 316 encouraged the jury to reach a verdict without considering all the evidence, because

> [the] instruction provides a guideline to the jury when it is evaluating the testimony of some of the witnesses. It does not instruct the jury to disregard any item of evidence. Indeed, the instruction specifically informs the jury that the weight of a witness's prior conviction is a matter for the jury to decide.

*Id*. at 11. The Court explained that the instruction used the permissive "*may*," rather than the mandatory "*must*," because a jury has to evaluate the testimony of each witness, make a credibility determination, and decide whether to believe the witness's testimony on its own. *Id*. at 12.

The Court found that the instruction did not affect any defense Petitioner presented at trial, "[n]or did the instruction prevent [Petitioner] from presenting, or prevent the jury from considering, evidence related to the credibility of prosecution witnesses." *Id*.

### 3. **The Trial Court Did Not Err in Instructing the Jury.**

CALCRIM No. 316 directed the jury that they "*may*" weigh a witness's criminal record in evaluating the witness's credibility. The instruction provided a guideline for the jury to follow in weighing a witness's credibility. The instruction did not, as Petitioner claims, encourage the jurors to ignore the witnesses' criminal records. Evaluated in this context, this Court cannot conclude that there was any reasonably likelihood the jurors misconstrued or misapplied the instruction in a way that violated Petitioner's right to due process of law and a fair trial. *Solis*, 219 F.3d at 927.

Evidence presented at trial established Petitioner's participation in the offenses.

9

Although there were individuals in gangs with criminal histories who testified for the prosecution, neighbors in the area of the shooting, Petitioner's family members, and a gang expert also testified. Witnesses testified that they recognized the car the shots were fired from as Petitioner's vehicle and recognized Petitioner as the driver of the vehicle. Petitioner's mother, Garcia, admitted that Petitioner drove the vehicle that was used in the shooting. On the night of the shooting, Garcia received a phone call from a friend telling her to leave the house because Petitioner had shot someone in the rival gang, presumably Gonzalez, and the gang would retaliate. When Garcia heard about the shooting, she told Petitioner to leave the state until she could hire him an attorney. Police officers recovered shotgun shells from Petitioner's apartment, at the scene of the shooting, and from the victim that were all altered to add multiple sizes of shot to the shotgun shells.

Having carefully considered the record and the instruction as a whole, the Court cannot conclude that the state court's determination that the jury instruction did not violate Petitioner's constitutional rights was contrary to or involved an unreasonable application of clearly established federal law. 28 U.S.C. § 2254(d). Considering the record as a whole, the Court is not convinced that the error influenced the jury's verdict.

### C. The Court Did Not Err in Instructing the Jury on Witnesses in Custody.

#### 1. The Instruction: CALCRIM No. 337

Petitioner maintains that CALCRIM No. 337 undermined the instruction regarding the credibility of witnesses with criminal convictions, CALCRIM No. 316. (Doc. 1 at 8.) As read to the jury at trial, CALCRIM No. 337 stated:

> [w]hen [shooting victim] Omar Rodriguez and [prosecution witness] Charles Rowan testified, they were physically restrained. Do not speculate about the reason. You must completely disregard this circumstance in deciding the issues in this case. Do not consider it for any purpose or discuss it during your deliberations. Evaluate the witness's testimony according to the instructions I have given you."

*Leon*, (No. F064119) at 13.

## 2. State Court of Appeal Opinion

The Court of Appeal disagreed with Petitioner that CALCRIM No. 316 and 337 conflicted, or that CALCRIM No. 337 instructed the jury to ignore the witnesses' criminal convictions. *Id*. The Court of Appeal, instead, determined that the instructions relate to different topics and did not conflict with one another. *Id*. CALCRIM No. 316 instructed the jury that it could consider a witness's criminal convictions in determining the witness's credibility. *Id*. CALCRIM No. 337, on the other hand, instructed the jury to ignore the fact that witnesses were restrained while they testified. *Id*. Because these instructions relate to different topics, the Court of Appeal held that they did not conflict. Further, the Court of Appeal noted that,

> [b]ecause the two instructions did not conflict, the instructions properly informed the jury it could utilize Rowan's prior conviction when evaluating his testimony, while ignoring Rowan being in custody when he testified. There was no error in instructing the jury with either CALCRIM No. 316 or 337.

*Id*.

## 3. The Trial Court Did Not Err in Instructing the Jury.

Both CALCRIM No. 316 and 337 are standard jury instructions that addressed different circumstances. CALCRIM No. 316 informed the jury that it could consider a witness's prior criminal convictions, while CALCRIM No. 337 told the jury to disregard the fact that a witness may be physically restrained. Because a witness who is physically restrained may or may not have a criminal record, the instructions properly instructed the jury to consider the criminal record in evaluating credibility, and ignore the restraints. The instructions relate to different topics, and as a result, do not negate one another when read together. The Court cannot conclude that there was a reasonable likelihood that the jurors misconstrued CALCRIM No. 316 based on CALCRIM No. 337, or in a way that violated Petitioner's constitutional rights. *Solis*, 219 F.3d at 927.

Having carefully considered the record and the instructions as a whole, the Court cannot conclude that the state court's determination that the jury instructions did not violate Petitioner's

11

constitutional rights was contrary to or involved an unreasonable application of clearly established federal law. 28 U.S.C. § 2254(d). Considering the record as a whole, the Court is not convinced that the error influenced the jury's verdict. Even if the Court were convinced that the jury could have reached a different verdict, it could not conclude that the state court's determination was contrary to or an unreasonable application of clearly established federal law.

## IV. The Court Did Not Err by Not Submitting the Lesser Included Offense to the Jury.

Petitioner maintains that the court erred by failing to include a heat of passion/voluntary manslaughter instruction as a lesser included offense to murder. (Doc. 1 at 10-13.) Respondent responds that there was no evidence to warrant an instruction on a lesser included offense to murder. (Doc. 16 at 18-20.)

### A. Federal Habeas Review of State Court Decision

Federal habeas corpus review is only available to correct violations of federal law. 28 U.S.C. §2254(a); *Estelle*, 502 U.S. at 68. "'Failure to give a jury instruction which might be proper as a matter of state law,' by itself, does not merit federal habeas relief." *Menendez v. Terhune*, 422 F.3d 1012, 1029 (9th Cir. 2005) (quoting *Miller v. Stagner*, 757 F.2d 988, 993 (9th Cir. 1985)). Instead, the Supreme Court has stated "a claim that a court violated a petitioner's due process rights by omitting an instruction requires a showing that the error 'so infected the entire trial that the resulting conviction violated due process.'" *Id*. (quoting *Henderson*, 431 U.S. at 154).

### B. State Court of Appeal Decision

The Court of Appeal reviewed the law of voluntary manslaughter, which is the unlawful killing of a human being without malice. *Leon*, (No. F064119) at 15 (citing Cal. Penal Code § 192.) The Court noted that an individual "who intentionally and unlawfully kills, lacks malice" in the following limited circumstances: (1) a sudden quarrel or heat of passion; or (2) unreasonable self-defense. *Id*. (quoting *People v. Barton*, 12 Cal. 4th 186, 199 (1995)). Here, Petitioner argues that the jury should have been instructed as to the heat of passion theory of manslaughter. *Id*.

The Court of Appeal stated that provocation is the factor that distinguishes the heat of

passion form of manslaughter from murder. *Id*. "Heat of passion arises when at the time of the killing, the reason of the accused was obscured or disturbed by passion to such an extent as would cause the ordinarily reasonable person of average disposition to act rashly and without deliberation and reflection, and from such passion rather than from judgment." *Id*. (internal citations and quotations marks omitted.) The heat of passion requirement has both an objective and subjective component. *Id*. To satisfy the subjective component, the person must actually kill under the heat of passion. *Id*. However, the circumstances that give rise to the heat of passion are viewed objectively. *Id*. To satisfy the objective component, the Court of Appeal explained that "this heat of passion must be such a passion as would naturally be aroused in the mind of an ordinarily reasonable person under the given facts and circumstances." *Id*. (internal citations and quotations omitted.)

> The Court of Appeal determined that
>
> the trial court did not err in failing to instruct the jury that voluntary manslaughter is a lesser included offense to murder because there was no evidence to support the subjective component of heat of passion manslaughter. [Petitioner] suggests the jury could have concluded he was provoked to act when his life-long friend, Chapa, was beaten up by a member of the Sureños criminal street gang. [Petitioner]'s testimony, however, precluded any such finding. First, [Petitioner] testified he was not at the scene of the shooting, therefore he denied his acts were the result of his outrage at the beating suffered by Chapa. Second [Petitioner] testified that while he was Chapa's friend, Chapa was a drunk who had a big mouth that repeatedly resulted in Chapa being beaten up. [Petitioner] confirmed he did not 'feel like he needed to go seek revenge" as a result of Chapa having been beaten. Therefore, there was no evidence to suggest [Petitioner] fired at Gonzalez and Diaz because his judgment was impaired by a heat of passion.
>
> [Petitioner]'s argument that the jury may have inferred he acted in a heat of passion is more logically directed at the objective component of heat of passion manslaughter: an ordinary reasonable person in [Petitioner]'s position may have been so aroused that he or she would lose reason and judgment. While we do not necessarily agree with this assertion, the absence of any evidence that [Petitioner] subjectively acted under a heat of passion, i.e., he acted without reason and judgment, precluded the consideration of voluntary manslaughter because both the objective and subjective components must be present. Accordingly, the trial court did not err.

*Id*. at 16-17.

### C. The Trial Court Did Not Err by Not Instructing on Heat of Passion.

The Ninth Circuit Court of Appeals has stated that "the failure of a state trial court to instruct on lesser included offenses in a non-capital case does not present a federal constitutional question." *Windham v. Merkle*, 163 F.3d 1092, 1106 (9th Cir. 1995) (citing *Turner v. Marshall*, 63 F.3d 807, 819 (9th Cir. 1995)). Consequently, the state court's failure to instruct as to the heat of passion offense does not rise to the level of a constitutional error.

Although this claim does not rise to the level of a constitutional error, even considering the claim, "[u]nder California law, a defendant is entitled to a jury instruction only if substantial evidence, or 'evidence sufficient to deserve consideration by the jury,' supports the giving of that instruction. *Menendez*, 422 F.3d at 1028 (quoting *People v. Barton*, 12 Cal. 4th 186, 201, n.8 (1995)). The Court of Appeal concluded that there was no error in not giving the heat of passion instruction because Petitioner could not prove both components of the defense. Petitioner's own testimony that he was not at the scene of the shooting and did not feel the need to "seek revenge" for Chapa's injuries failed to support a heat of passion defense. Therefore, Petitioner could not meet the subjective component of the defense—that he killed in the heat of passion.

To collaterally attack state court jury instructions, Petitioner must do more than prove that the instruction was erroneous. *Henderson*, 431 U.S. at 154. Here, Petitioner has not shown that the instruction was erroneous. However, even if Petitioner could show that the instruction was erroneous, Petitioner must additionally show that the error "had a substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637 (internal quotations omitted). The question before the Court is whether, in light of the record as a whole, the failure to instruct as to heat of passion "had [a] substantial and injurious effect or influence in determining the jury's verdict." *Id*. The Court finds that it did not have a substantial and injurious effect.

In his habeas petition, Petitioner argues that evidence could have supported a heat of passion defense "based upon the theory that [P]etitioner or his friend Gustavo Chapa committed the shooting in passionate response to the beating Chapa had earlier received at the hands of Omar Rodriguez." (Doc. 1 at 10-11.) However, Petitioner testified at trial that he was *not* at the

14

scene of the shooting and he denied that felt the need "to go seek revenge" for Chapa. *Leon*, (No. F064119) at 16. Therefore, even if a heat of passion defense was presented to the jury, there was no evidence adduced at trial to support a jury finding that the crimes were committed by Petitioner in the heat of passion. Based on Petitioner's testimony, the Court agrees with the state court's finding that Petitioner failed to demonstrate a heat of passion instruction was appropriate. Therefore, the Court recommends Petitioner's claim be dismissed.

## V. **Cumulative Error**

If the Court agrees with the findings and recommendations of the undersigned, it need not reach the claim of cumulative error.

## VI. **Certificate of Appealability**

A petitioner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, but may only appeal in certain circumstances. *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003). The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides:

> (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.
>
> (b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.
>
> (c)   (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—
>
>   (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
>
>   (B) the final order in a proceeding under section 2255.
>
>   (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

(3) The certificate of appealability under paragraph (1) shall indicate which specific issues or issues satisfy the showing required by paragraph (2).

If a court denies a habeas petition, the court may only issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327; *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Although the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his . . . part." *Miller-El*, 537 U.S. at 338.

Reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal habeas corpus relief to be debatable or wrong, or conclude that the issues presented required further adjudication. Accordingly, the Court declines to issue a certificate of appealability.

## VII. <u>Conclusion and Recommendation</u>

Based on the foregoing, the undersigned recommends that the Court deny the Petition for writ of habeas corpus with prejudice and decline to issue a certificate of appealability.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C § 636(b)(1). Within **thirty (30) days** after being served with these Findings and Recommendations, either party may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to the objections, if any, shall be served and filed within **fourteen (14) days** after service of the objections. The parties are advised that failure to file objections within the specified time may constitute waiver of the right to appeal the District Court's order. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 ((9th Cir. 2014) (citing *Baxter v.*

16

*Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **December 13, 2017**  /s/ *Sheila K. Oberto*
UNITED STATES MAGISTRATE JUDGE